UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LIA LANDO,

Plaintiff,

v.

SCRIPPS MEDIA, INC.
d/b/a WKBW-TV,

Defendant.

---

**DECISION AND ORDER**

6:25-CV-06440 EAW

## INTRODUCTION

Plaintiff Lia Lando ("Lando" or "Plaintiff") brings this action against Scripps Media, Inc. d/b/a WKBW-TV ("Defendant" or "WKBW") alleging claims of gender, age, and disability discrimination, hostile work environment, and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* (Dkt. 7). Pending before the Court is WKBW's motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 10). For the following reasons, the motion is granted as to the sixth cause of action (promissory estoppel), but otherwise denied.

## BACKGROUND

### I. Factual Background

The following facts are taken from the amended complaint. As required on a motion to dismiss, the Court treats the well-pleaded factual allegations as true.

Lando is a 48-year-old female veteran news anchor and reporter, with over 20 years in the news industry. (Dkt. 7 at ¶¶ 2-4).

In May 2022, Lando began working for WKBW as an Anchor/Multimedia Journalist under contract for three years. (*Id.* at ¶ 8). She began her tenure as Evening Anchor with WKBW in September 2022. (*Id.* at ¶ 5). To accept the offer with WKBW, Lando was told by the station's News Director and Vice President and General Manager that she must relocate to Buffalo from Rochester. (*Id.* at ¶ 6). Lando ended her contract with a news station in Rochester, sold her home, and moved to Buffalo, under promise from WKBW executives that she would "have a long career and would be able to retire in Buffalo." (*Id.* at ¶¶ 6-7).

In April 2023, Lando was diagnosed with Cutaneous T-Cell Lymphoma, a rare form of cancer. (*Id.* at ¶ 13). Because of her diagnosis, Lando took intermittent time off from work to attend treatment sessions and medical appointments. (*Id.* at ¶ 14). After informing WKBW executives of her cancer diagnosis, repeated questions were raised by Station Manager LeAnne Markin ("Markin") about Lando's medical situation. (*Id.* at ¶¶ 16-17). Lando was excluded from meetings and promotional campaigns, which she expected to be a part, on a regular basis. (*Id.* at ¶ 18).

In or around February 25, 2025, Lando "reached out" to WKBW's Human Resources department and "air[ed] her concern that she was being discriminated against." (*Id.* at ¶ 21). That same month, Lando also completed an employee satisfaction survey regarding WKBW's work culture. (*Id.* at ¶ 22). In response to the survey, Lando described the comments and "interrogat[ion]" about her diagnosis and specific personal information

that "made her extremely uncomfortable," naming Markin. (*Id.* at ¶ 22). Lando's survey response was sent to Human Resources and Markin. (*Id.* at ¶ 23).

Lando's contract with WKBW was set to expire on May 22, 2025. (*Id.* at ¶ 8). Before the expiration, Lando was "assured" by WKBW's News Director that her contract would be renewed (*id.* at ¶ 19) and was told by the station's head recruiter that she was valuable to the station and should she consider leaving Buffalo, there would be other opportunities with Defendant available to her (*id.* at ¶ 20). Lando received "extremely positive feedback" during her employment with WKBW. (*Id.* at ¶ 12).

However, on March 4, 2025, Lando was informed that she was terminated from her position (*id.* at ¶ 24) and her name was removed from her stories (*id.* at ¶ 41). Lando was told she was laid off to "save money" (*id.* at ¶ 27) as part of a Scripps Media, Inc.-wide layoff (*id.* at ¶ 35) and because she was the least senior anchor (*id.* at ¶ 30). Markin was responsible for determining which financial cutbacks to make for WKBW, including which employees to lay off. (*Id.* at ¶ 35). In addition to Lando, at least six other WKBW employees were laid off: Mary Beth Wrobel (approximately 60 years old), Erin Phillips (approximately 20 years old), Paula Damico (approximately 60 years old), Alyssa Sengbush (approximately 20 years old), Mercedes Wilson (approximately 42 years old), and Adam Francis (approximate age not alleged). (*Id.* at ¶ 28-29, 39). Ms. Wilson, who was also diagnosed with cancer, was rehired by WKBW after initially being laid off. (*Id.* at ¶ 29).

Not included in the layoff were anchors Michael Wooten (approximately 40 years old), allegedly hired after Lando, and Taylor Epps (approximately 25 years old).[1] (*Id.* at ¶ 30). Ms. Epps was hired by WKBW in 2019 as Anchor/Reporter and changed her position to Senior Reporter approximately a month before the layoffs were announced. Lando alleges she was "more senior" than both Mr. Wooten and Ms. Epps and absent Ms. Epps's title change, Ms. Epps would have been the "least senior anchor." (*Id.* at ¶¶ 33, 47). Lando alleges Markin changed Ms. Epps's title to protect her from the layoffs. (*Id.* at ¶¶ 31-31).

On March 11, 2025, Markin created two new positions, Executive Reporter and Creative Services. (*Id.* at ¶ 36). Lando asked WKBW's News Director if she could apply for one of these positions and was told, "I don't want to get too excited but let me check." (*Id.* at ¶ 37). Lando never heard back from the News Director. (*Id.* at ¶ 38). Mr. Francis, who was let go during the company-wide layoff, was hired for the Executive Reporter position. (*Id.* at ¶ 39).

Lando was informed by her union representative that her male co-anchor, Jeff Russo, was paid approximately $42,000 a year more than her. (*Id.* at ¶ 43). Mr. Russo was hired by WKBW in 2003 as a Sports Anchor and moved to the News Anchor position in 2015. (*Id.* at ¶ 45).

---

[1] Lando alleges that Ms. Epps was hired after Lando (*id.* at ¶ 30); however, Lando later asserts that Ms. Epps was hired in 2019 (*id.* at ¶ 32) and that Lando was hired in 2022 (*id.* at ¶¶ 5, 8). The Court assumes that Lando intended to state that only Mr. Wooten was hired after Lando.

Lando also alleges that WKBW "forced out" another older female anchor, Joanna Pasceri, at age 50, replacing her with younger anchors while allowing her male co-anchor to continue in the position until his retirement. (*Id.* at ¶ 48). Lando also points to three lawsuits, allegedly based on gender and age discrimination, filed against Defendant by Jane Monreal, Julie O'Neill, and Sandra Maas. (*Id.* at ¶ 49).

## II. Procedural Background

Lando brought this proceeding in state court on or about July 15, 2025. (Dkt. 1 at ¶ 1). Defendant removed the case to federal court on August 22, 2025, based on diversity jurisdiction. (*Id.* at ¶¶ 5-29). Shortly thereafter, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on August 29, 2025. (Dkt. 4). On September 19, 2025, Lando filed the amended complaint, the operative complaint in this action (Dkt. 7), thus mooting the original motion to dismiss (Dkt. 8).

The amended complaint asserts the following causes of action under the NYSHRL: (1) gender discrimination and wrongful termination; (2) age discrimination and wrongful termination; (3) discrimination on the basis of disability, hostile work environment, and wrongful termination; (4) sex-plus age and/or disability discrimination; and (5) unlawful retaliation and wrongful termination. The amended complaint also contains a claim for promissory estoppel. (Dkt. 7).

Defendant filed the instant motion to dismiss on October 3, 2025. (Dkt. 10). Lando filed her brief in opposition on January 9, 2026, (Dkt. 15), and on January 23, 2026, Defendant filed its reply brief (Dkt. 17).

## DISCUSSION

### I. Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). This consideration also includes "documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). A court should evaluate the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual

allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation omitted).

## II. **Discrimination Claims (Claims One through Four)**

Defendant moves to dismiss all NYSHRL discrimination claims against it because Lando's claims are "vague, conclusory, and formulaic" and she has failed to plausibly allege that she was treated less well because of her gender, age, or disability nor pleaded any discriminatory motive on the part of Defendant. (Dkt. 10-1 at 8, 15, 20-22).

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's age, . . . gender identity or expression, . . . sex, [or] disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The pleading standards for the NYSHRL largely aligned with those for Title VII of the Civil Rights Act of 1964 until 2019 when the New York legislature amended the NYSHRL. *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 123 (2d Cir. 2024). The 2019 amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the [New York City Human Rights Law]." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see McHenry v. Fox*

*News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) ("[T]he NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'" (quoting N.Y. Exec. Law § 300)).

Plaintiff brings four claims under the NYSHRL for gender discrimination, age discrimination, disability discrimination which she also frames as a hostile work environment, and sex-plus discrimination, for each of which she must plausibly allege that she was treated "less well" at least in part because of her membership in a protected class. Under this standard, the Court considers each of Plaintiff's discrimination claims in turn.

**A. Gender Discrimination (First Cause of Action)**

Defendant moves to dismiss the first cause of action of the amended complaint on the basis that Lando has failed to plausibly allege that she was treated less well because of her gender. Defendant argues that Lando fails to sufficiently allege facts to support her claims of disparate treatment, including that she simply alleges in a conclusory manner that a male co-worker received preferential treatment in being rehired and her male co-anchor was paid more than her without pleading facts supporting that Lando and her co-anchor were similarly situated. (Dkt. 10-1 at 17; Dkt. 17 at 9-10). The Court disagrees. Defendant seeks to have this Court resolve factual issues at this stage of the proceedings, repeatedly citing to caselaw addressing similar claims in the context of summary judgment motions. But this is a motion to dismiss under Rule 12(b)(6). In viewing the amended complaint in the light most favorable to Lando and accepting all allegations in the amended complaint,

Lando has plausibly alleged gender discrimination based on disparate treatment through WKBW's termination of her employment while retaining male employees and paying Lando less than a male co-anchor.

Lando supports her allegations of gender discrimination with comparisons to non-protected employees. In determining whether a plaintiff has met the plausibility requirement, "the court is to draw on its judicial experience and common sense." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679). Because there is rarely "direct, smoking gun, evidence of discrimination," a plaintiff may rely on "bits and pieces of information to support an inference of discrimination." *Id*. at 86. At the motion to dismiss stage, a plaintiff need only meet the "minimal" burden of plausibly alleging facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Id.* at 87 (cleaned up). Where, as here, Lando does not allege that Defendant made any expressly discriminatory statements, she may support an inference of discrimination with similarly situated individuals who received preferential treatment. *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). To survive a motion to dismiss, a plaintiff need only allege facts making it "plausible that a jury could ultimately determine that the comparators are similarly situated." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011).

Lando alleges that she and at least six other WKBW employees were terminated in the company-wide on March 4, 2025, which included at least one male co-worker, Adam Francis. (Dkt. 7 at ¶¶ 24, 28-29, 39). Yet, Mr. Francis was "encouraged by Defendant to apply" for one of the new internal roles and was rehired for that role by Defendant while Lando asked about applying but did not hear back. (*Id.* at ¶ 39). Similarly, Lando alleges that Micheal Wooten, an anchor who was not laid off, is "male and approximately 40 years old" and was "hired after Plaintiff," implying that he was less senior. (Dkt. 7 at ¶¶ 30, 47). These allegations adequately raise an inference of gender discrimination, by citing to similarly situated male employees who were treated more favorably.

Lastly, Lando was told she was paid approximately $42,000 less than her male co-anchor, Jeff Russo. (*Id.* at ¶ 43). Here, Lando satisfies her "*minimal* burden" of alleging facts "suggesting an inference of discriminatory" for this claim. *Littlejohn*, 795 F.3d at 311. Lando alleges that a "similarly situated . . . male colleague" was "paid more than she was, despite having [similar] responsibilities and equal or lesser credentials." *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 286 (S.D.N.Y. 2020) (quoting *Craven v. City of New York*, No. 19-CV-1486, 2020 WL 2765694, at *5 (S.D.N.Y. May 28, 2020)).

In sum, Plaintiff's gender discrimination sufficiently alleges facts to create a reasonable inference that her male co-workers were similarly situated to her and treated more favorably. Defendant's motion to dismiss the first cause of action is denied.

**B. Age Discrimination (Second Cause of Action)**

Defendant argues that Lando's claims for age discrimination and wrongful termination in violation of NYSHRL should be dismissed for similar reasons as her other

discrimination claims: sparse and contradictory factual allegations that fail to sufficiently allege Lando was treated less well based on Defendant's discriminatory motive. (Dkt. 10-1 at 20-21; Dkt. 17 at 10-11). Lando responds that she has "provided an abundance of circumstantial evidence . . . showing the probable discriminatory intent behind her termination." (Dkt. 15 at 14).

As a preliminary matter, the Court has not considered any factual allegations first introduced throughout Lando's opposition.[2] *See Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 285 (S.D.N.Y. 2015) (citing, *inter alia*, *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are also treated as matters outside the pleading[s] for purposes of Rule 12(b).")).

The allegations in the amended complaint do not include direct evidence of discrimination, such as derogatory or invidious comments, nor does Lando allege that she was replaced by a younger worker. Instead, Lando appears to rely solely on the circumstantial evidence that WKBW terminated her employment when she was approximately 45 years old (Dkt. 7 at ¶¶ 2, 5), that at least three other employees over the age of 40 were also laid off in March 2025, (*id.* at ¶¶ 28-29), that one former female anchor

[2] For age discrimination, this includes the approximate number of laid off employees and the alleged percentage of employees over the age of 40 who were laid off. (Dkt. 15 at 15). For the disability discrimination and hostile work environment claims, this includes that Markin, in part, was responsible for Lando's exclusion from meetings and events, and that these meetings were "crucial" and "essential" to her position as evening anchor that she was "entitled" to attend. (*Id.* at 17-19). For the sex-plus discrimination claims, this includes that Ms. Wilson was rehired after being laid off to a "less prestigious position." (*Id.* at 20).

was "forced out" and replaced with younger anchors (*id.* at ¶ 48), and three former female anchors filed suit against Defendant for age discrimination (*id.* 7 at ¶ 49). Relying on these facts, Lando seeks to establish that WKBW "has a reputation for exactly this kind of [age] discrimination," (Dkt. 15 at 14) and an inference of her age being a motivating factor in WKBW's decision to terminate her.

While the allegations of age discrimination may be thin, under the permissive NYSHRL standard and mindful that this is a Rule 12(b)(6) motion, the Court concludes that Plaintiff has sufficiently alleged an inference of discriminatory intent to "raise a reasonable expectation that discovery will reveal evidence" of the wrongdoing alleged, sufficient to "nudge [her] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570, 556. Indeed, a complaint that satisfies this standard is "well-pleaded" and "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id*. at 556. For these reasons, Defendant's motion to dismiss the second cause of action is denied.

### C. Disability Discrimination (Third Cause of Action)

Discrimination on the basis of disability and wrongful termination are examined under the same amended NYSHRL rubric as gender and age discrimination. Again, Defendant moves to dismiss Lando's disability discrimination for formulaic and conclusory allegations that her termination had anything to do with her cancer diagnosis, including a failure to prompt a reasonable inference of a discriminatory motive because: (i) Lando was diagnosed in 2023, began taking time off intermittently for her appointments but was not terminated until 2025; and (ii) WKBW employed and rehired another employee

with a cancer diagnosis. (Dkt. 10-1 at 21). According to Defendant, these allegations work against Lando's argument that underlying the termination was discriminatory intent. Defendant further argues that Lando's allegations must be dismissed because they are based on "conclusory intuitions and generalized allegations of hostility." (*Id.*).

It is without doubt that Lando's cancer diagnosis falls squarely under the NYSHRL's definition of disability, *see* N.Y. Exec. Law § 292(12), and Defendant does not dispute this. Construing the amended complaint in the light most favorable to Lando, she alleges that she was subjected to "interrogat[ing]" questioning and comments from Markin regarding her condition and absences, including specific personal information (Dkt. 7 at ¶¶ 16-17, 22); Markin "repeatedly" ask Lando's colleagues about her diagnosis and absences (*id.* at ¶ 17); and Lando was excluded from meetings and promotional campaigns she expected to participate in as evening anchor (*id.* at ¶ 18). In evaluating Lando's allegations regarding Markin's questions and comments, "[t]he Court considers the totality of the circumstances, and while courts may dismiss truly insubstantial cases, even a single comment may be actionable in the proper context, for purposes of the [the non-discrimination laws]." *Bacchus v. New York City Dep't of Educ.*, 137 F. Supp. 3d 214, 245 (E.D.N.Y. 2015) (cleaned up). Although Lando does not specify beyond broad strokes the contents of the questions or comments or when they began other than it was after she notified WKBW leadership of her diagnosis (Dkt. 7 at ¶ 15), this is arguably direct evidence of discrimination alleged in the form of negative or disparaging comments and there is no requirement that a plaintiff allege specifics of disparaging statements with particularity in a discrimination complaint. Moreover, Lando does identify the individual asking the

questions and making the comments, Markin, who, accepting Lando's allegations as true, is also the decisionmaker in Lando's termination. "[A]ctions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus" may "give rise to an inference of discriminatory motive." *Gregory v. Daly,* 243 F.3d 687, 697 (2d Cir. 2001) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 91 (2d Cir. 1996)).

Defendant argues that Markin's questions and comments were merely "trivial inconveniences or maybe petty slights at most" from a Station Manager managing staff, revealing only "plaintiff's feelings and perceptions of being discriminated against," not indications of discrimination. (Dkt. 10-1 at 21; Dkt. 17 at 11). But these questions and comments cannot be so blithely discounted, particularly on a motion to dismiss. The comments and questions alone may not create an inference of discrimination on their own but could do so in light of the totality of the circumstances. Drawing all reasonable inferences from the amended complaint, while Lando was subjected to the questions and comments from Markin, she was also being excluded from meetings and campaigns with which she had previously been involved. (Dkt. 7 at ¶ 18). Additionally, although Lando does not specify when the comments and questions started, it is clear from the allegations that they continued until at least February 25, 2025, when she made her complaint to Human Resources, only a few days before she was terminated. (*Id*. at ¶¶ 16-17, 21-22, 24). Viewing the amended complaint's disability discrimination allegations as a whole, Lando has alleged facts linking the questions and comments to her termination, such that an inference of discriminatory motivation is plausible.

**D. Hostile Work Environment (Third Cause of Action)**

Lando's claim alleging a hostile work environment is closely tied to and reliant on the same facts as her claim for disability discrimination—in fact, it is part of the same cause of action. Defendant argues that Lando's claim should be dismissed because she has failed to plead sufficient facts to inch her hostile work environment claim across the line from conceivable to plausible. (Dkt. 10-1 at 19-20)

A court reviews the totality of the circumstances when assessing a NYSHRL claim. *Moazzaz v. MetLife, Inc.*, No. 19-CV-10531, 2021 WL 827648, at *9 (S.D.N.Y Mar. 4, 2021). In 2019, the NYSHRL eliminated the requirement that a hostile work environment claim be based on severe or pervasive conduct. *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 334 n.9 (S.D.N.Y. 2020). But even before the 2019 amendment, courts have recognized that the NYSHRL requires an "extraordinarily sensitive and comprehensive analysis . . . to assess a total set of workplace circumstances and determine whether a particular set of words and actions were enough to make that workplace a different, less tolerable environment for the victimized party." *Moazzaz*, 2021 WL 827648, at *9 (quoting *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 259 (S.D.N.Y 2014)). Such claims are "particularly ill-suited to dismissal at the pleading stage." *Id.* (quoting *Torres v. New York Med. Hosp.*, No. 15-CV-01264, 2016 WL 3561705, at *9 (E.D.N.Y Jan. 7, 2016)).

Here, Lando has stated a claim for discrimination under a disability-based hostile work environment theory. Lando alleges she experienced a hostile work environment after notifying the leaders at WKBW of her diagnosis (Dkt. 7 at ¶ 15) when Markin began asking

her and her co-workers questions regarding her diagnosis and absences after almost every day Lando was out due to medical appointments, including questions regarding specific personal information making Lando uncomfortable (*id.* at ¶¶ 16-17, 22). She alleges that her termination occurred under circumstances giving rise to an inference of discrimination because in addition to being repeatedly questioned about her diagnosis and absences, she was excluded from meetings and promotional events. (*Id.* at ¶ 26). These incidents created a "less tolerable environment" and "inferior conditions" such that Lando "reached out to Human Resources to air her concern that she was being discriminated against" and described these events, naming Markin, in a survey submitted to Human Resources. (*Id.* at ¶¶ 22-23). While Defendant contends that the comments show nothing more than the Station Manager managing staff (Dkt. 17 at 11), that Lando merely "expected" to participate in meetings and campaigns, and that Lando neglects to name who instigated her exclusion, those assertions do not negate Lando's allegations which are taken as true for the purposes of a motion to dismiss.

At this stage of the proceedings, Lando's allegations in the amended complaint support an inference that she was subjected to a hostile work environment because of her disability. Thus, Defendant's motion to dismiss the third cause of action as to disability discrimination and hostile work environment is denied.

**E. Sex-Plus Discrimination (Fourth Cause of Action)**

In addition to her other claims, Lando asserts an independent claim that she faced discrimination based on sex-plus age and/or sex-plus disability. In other words, Lando claims that she was treated differently because of her status as an older woman and/or a

woman with cancer, rather than because of age or gender acting as independent factors. In support, she contends that other female employees—younger and/or without a disability—were treated preferentially. Defendant moves to dismiss this claim on the same basis as argued with respect to the other discrimination claims.[3] Thus, for the same reasons discussed above, Defendant's motion to dismiss this claim is denied.

## III. Retaliation Claim (Fifth Cause of Action)

The NYSHRL makes it unlawful for an employer to retaliate or discriminate against an employee because she "has opposed any practices forbidden under this article or because . . . she has filed a complaint, testified or assisted in any proceeding under this article." N.Y. Exec. Law. § 296(7). "[A] plaintiff claiming retaliation must demonstrate that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025). The retaliatory conduct must have been undertaken "'at least in part' because of 'retaliatory motives.'" *Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, No. 23-CV-7900, 2025 WL 1501751, at *5 (2d Cir. May 27, 2025) (quoting *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015)).

Defendant contends that Lando has failed to state a retaliation claim because her employment ended as a result of a company-wide layoff and she has failed to sufficiently

[3] Defendant does not argue that a sex-plus age or sex-plus disability claim is not actionable under the amended NYSHRL. Thus, for purposes of this motion, the Court assumes that such a claim may be asserted.

allege that Markin was aware of her complaints. (Dkt. 10-1 at 23-24). Defendant also criticizes Lando's reliance upon her completion of the employee satisfaction survey because there are no allegations that she complained about discrimination in that survey. (*Id*. at 24).

On the latter point, the survey response "need not have explicitly used the words 'discrimination' . . . to afford [her] complaints protected-activity status." *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521 (S.D.N.Y. 2010); *see also Ramos v. City of New York*, No. 96-CV-03787, 1997 WL 410493, at *3 (S.D.N.Y. July 22, 1997) ("[T]here are no magic words that must be used when complaining about a supervisor."). Taking Lando's allegations as true and drawing all reasonable inferences in her favor, she alleges that she expressly complained about discrimination to Human Resources on February 25, 2025, and that same month she completed the employee satisfaction survey describing Markin's interrogation about her medical condition. (Dkt. 7 at ¶¶ 21-22). Particularly at this stage of the proceedings, this is more than sufficient to allege the requisite protected activity to state a retaliation claim.

Similarly, with respect to the claim that Lando has failed to plausibly allege Markin's awareness of her complaints, the Court disagrees. Based on Markin's position within WKBW and the allegations in the amended complaint, knowledge by Markin is sufficiently alleged at this stage of the proceedings. And a plaintiff need only show "general corporate knowledge." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007); *see also Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 148 (2d Cir. 2010) (a plaintiff claiming

retaliation need not "show that the particular individuals who carried out an adverse action knew of the protected activity").

Finally, Defendant's reliance on the company-wide layoffs to try to defeat the retaliation claim at this stage of the proceedings is misdirected. The amended complaint acknowledges the company-wide layoffs, but also alleges that Markin created new positions after the layoffs (*id*. at ¶36), and allegedly manipulated at least one employee's position to spare them from the layoffs (*id*. at ¶¶ 31-32). In other words, a fair reading of Lando's allegations is that WKBW used the company-wide layoffs to help orchestrate the termination of her employment almost immediately after she engaged in protected activity. This is sufficient to withstand a motion to dismiss.

**IV. Promissory Estoppel Claim (Sixth Cause of Action)**

Defendant argues that promissory estoppel does not apply in Lando's employment relationship and separately that Lando failed to allege facts sufficient to meet each element of the claim. (Dkt. 10-1 at 11-15). To state a claim for promissory estoppel under New York law, a plaintiff must allege: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise. *See Thompson v. Combined Sys.*, No. 17-CV-06007, 2017 WL 2546611, at *10 (W.D.N.Y. June 13, 2017) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000)).

While courts in this circuit disagree regarding the reach of promissory estoppel under New York law in the employment context, *see Christian v. TransPerfect Glob., Inc.*, No. 17-CV-5554, 2018 WL 4571674, at *8 (S.D.N.Y. Sept. 24, 2018) (collecting cases),

courts have "generally applied the bar when no promise arises that is separate from an employment relationship," *Shetel Indus. LLC v. Adin Dental Implant Sys.*, No. 17-CV-2505, 2021 WL 1108666, at *5 (E.D.N.Y. Mar. 23, 2021); *see R.R. Donnelley & Sons Co. v. Marino*, No. 6:20-CV-06722 EAW, 2021 WL 4441515, at *5-6 (W.D.N.Y. Sept. 28, 2021) (dismissing promissory estoppel claim where the proponent did not allege promises separate from the employment relationship).

In her opposition papers, Lando acknowledges the requirement that a promise arise outside the employment relationship to maintain a promissory estoppel claim (Dkt. 15 at 23), but then proceeds to expend multiple pages on why she has stated a claim for promissory estoppel citing only to facts grounded in her employment with WKBW. (*See, e.g.*, Dkt. 15 at 23 ("[i]f Plaintiff moved to Buffalo, then she would be given a job at Defendant through her retirement" and "Plaintiff had been working with Defendant prior to the employment offer"); 24 ("these promises were made to Plaintiff by both the News Director" and "Vice President and General Manager" and "[b]eing promised 'long-term employment' blatantly implies an employment term of more than a mere three years"); 26 (Plaintiff "had left her position in Rochester prior [to] the end of her contract, effectively 'burning bridges' with her prior employer")). Lando inexplicably fails to explain how the promise of "a long career and would be able to retire in Buffalo" should she relocate to Buffalo from Rochester and accept the position with WKBW does not concern the duration and location of her employment. Each of Lando's supporting facts make clear that the alleged promise was not separate from, but rather was central to the employment relationship. *Cf. Christian*, 2018 WL 4571674, at *8 (recognizing a viable promissory

estoppel claim because plaintiff's performance of duties assigned to other officers extended beyond the scope of his employment, "thus not coextensive with his employment relationship"). Indeed, Lando expressly alleges in the amended complaint that her promissory estoppel claim is based on "promises regarding the terms and conditions of her employment," (Dkt. 7 at ¶ 91), thus undermining any attempt she now makes to contend that the promise arose outside the employment relationship.

While Defendant raises other arguments addressed to the promissory estoppel claim, the Court need not reach those issues because the promissory estoppel claim cannot survive without an alleged promise outside the employment relationship. No such promises is alleged, and thus Defendant's motion to dismiss the sixth cause of action is granted.

**CONCLUSION**

For the foregoing reasons, the Court denies Defendant's motion to dismiss (Dkt. 10) as to the discrimination and retaliation claims (first through fifth causes of action) but grants Defendant's motion as to the promissory estoppel claim (sixth cause of action). Defendant shall file an answer in accordance with the timing requirements of Federal Rule of Civil Procedure 12(a)(4)(A).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 28, 2026
Rochester, New York